1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CARLOS ROMERO BURNETT,                    No.  2:17-cv-1856 KJM KJN P

12                 Plaintiff,

13        v.                                   ORDER AND FINDINGS AND
                                               RECOMMENDATIONS
14   CASKEY, et al.,

15                 Defendants.

16

17   I.  Introduction

18        Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment on

20   the grounds that plaintiff failed to exhaust administrative remedies.  (ECF No. 30.)   Defendants

21   also move to dismiss plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

22        For the reasons stated herein, defendants' motion to dismiss is granted with leave to

23   amend.  The undersigned recommends that defendants' summary judgment motion be granted in

24   part and denied in part.

25   II.  Exhaustion of Administrative Remedies

26        A.  Legal Standard for Summary Judgment

27        Summary judgment is appropriate when it is demonstrated that the standard set forth in

28   Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

                                        1

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on February 21, 2018 (ECF No. 19), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

3

1   <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

2         B.  <u>Plaintiff's Allegations</u>

3        This action proceeds on the first amended complaint filed January 2, 2018, against

4   defendants Soto and Caskey.  (ECF No. 14.)  Plaintiff alleges that defendant Caskey is a

5   Correctional Supervisor at the California Health Care Facility ("CHCF").  (<u>Id.</u> at 3.)  Plaintiff

6   alleges that defendant Soto is a Correctional Property Officer at a prison in Delano, California,

7   i.e., Kern Valley State Prison ("KVSP").  (<u>Id.</u>)

8        Plaintiff alleges that defendant Soto failed to send plaintiff's legal property to plaintiff

9   after plaintiff transferred away from KVSP on July 24, 2017.  (<u>Id.</u> at 4.)  Plaintiff alleges that at

10   the time he prepared the first amended complaint, he still did not have his legal property.  (<u>Id.</u>)

11   Plaintiff alleges that without his legal property, he could not pursue his non-frivolous claims to

12   challenge his conviction before the AEDPA statute of limitations ran out.[1]  (<u>Id.</u>)

13        Plaintiff alleges that prior to October 2, 2017, defendant Caskey would not allow plaintiff

14   to have his legal property.  (<u>Id.</u>)  Plaintiff alleges that defendant Caskey told plaintiff, "You can't

15   have your property."  (<u>Id.</u> at 5.)  Plaintiff also alleges that he was denied access to an adequate

16   law library.  (<u>Id.</u> at 4.)  Plaintiff alleges that the law library at CHCF consists only of a computer,

17   no copier and no manila envelopes.  (<u>Id.</u>)  Plaintiff alleges that due to the inadequate law library,

18   he was "frustrated or impeded" in pursuing his non-frivolous claims challenging his conviction

19   and conditions of confinement.  (<u>Id.</u>)  Plaintiff alleges that defendant Caskey deprived him of

20   manila envelopes, forms and duplication.  (<u>Id.</u> at 5.)

21         C.  <u>Legal Standard for Exhaustion of Administrative Remedies</u>

22        Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o

23   action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other

24   Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

25   administrative remedies as are available are exhausted."  42 U.S.C.§ 1997e(a).  Prisoners are

26

27   [1]  Plaintiff is referring to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which contains a one year statute of limitations for filing federal habeas corpus petitions.  <u>See</u> 28 U.S.C.

28   § 2244(d)(1).

required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-201 (9th Cir. 2002).

Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S. Ct. 1850, 1857, 1859 (2016). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

As the U.S. Supreme Court recently explained in Ross, 136 S. Ct. at 1856, regarding the PLRA's exhaustion requirement:

> [T]hat language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.... [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."

Id. (internal citations omitted).

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

D. Relevant Time Period for Administrative Exhaustion

Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199–201 (9th Cir. 2002) (per curiam). If, however, a plaintiff files an amended complaint adding *new* claims, the plaintiff may proceed on the *new* claims if those claims were fully exhausted before tendering the

amended complaint for filing.  Rhodes v. Robinson, 621 F.3d 1002, 1006-07 (9th Cir. 2010) (emphasis added).  As long as those new claims are fully exhausted at the time the amended complaint is filed, it does not matter whether the new claims arose before or after the date on which the initial complaint was filed; the claims can proceed as long as they are *new claims that were not alleged in the initial complaint*, and are fully exhausted prior to the filing of the amended complaint.  See Cano v. Taylor, 739 F.3d 1214, 1220–21 (9th Cir. 2014) (allowing amended complaint to proceed on new claims that arose prior to the date on which the initial complaint was filed) (emphasis added); Akhtar v. Mesa, 698 F.3d 1202, 1210 (9th Cir. 2012) (allowing amended complaint alleging new claims that arose after the initial complaint was filed).

Plaintiff filed the original complaint on September 7, 2017.  (ECF No. 1.)  The original complaint named Soto and Caskey as defendants.  (Id.)  In the original complaint, plaintiff alleged that defendant Soto would not give him his legal property.  (Id. at 3.)  Thus, the claims against defendant Soto in the original complaint and the amended complaint are the same.[2]  Accordingly, plaintiff is required to have exhausted his claims against defendant Soto before he filed the original complaint on September 7, 2017.

In the original complaint, plaintiff alleged that defendant Caskey denied him access to the courts by denying him access to manila envelopes.[3]  (Id. at 3.)  As discussed above, in the amended complaint, plaintiff alleges that prior to October 2, 2017, defendant Caskey would not allow him access to his legal property.  (ECF No. 14 at 4.)  Plaintiff also alleges that the law library at CHCF is inadequate because it contains only a computer, no copier and no manila envelopes.  (Id.)

The only claim against defendant Caskey raised in both the original and amended complaints concerns the lack of manila envelopes.  Thus, plaintiff is required to have exhausted

---

[2]  The undersigned dismissed the claims against defendant Soto raised in the original complaint with leave to amend because plaintiff did not allege that he suffered an actual injury as a result of not having access to his legal property.  (ECF No. 10 at 3-4.)

[3]  The undersigned dismissed plaintiff's claims against defendant Caskey with leave to amend because plaintiff did not describe how his failure to receive manila envelopes prevented him from accessing the courts.  (ECF No. 10 at 4.)

this claim prior to filing the original complaint. The other claims raised against defendant Caskey in the amended complaint, which were not raised in the original complaint, must have been exhausted before plaintiff filed the amended complaint on January 2, 2018.

E. <u>Defendants' Evidence Regarding Administrative Exhaustion</u>

Defendants cite the declaration of D. Foston, an appeals examiner for the California Department of Corrections and Rehabilitation ("CDCR") Office of Appeals ("OOA"). (ECF No. 30-3.) D. Foston states, in relevant part,

> 5. I understand that Plaintiff filed his complaint in this action on January 2, 2018. I further understand that Plaintiff alleges that between July 2017 and October 2017, defendants denied him access to his legal property and denied him access to the courts. At the request of the Attorney General's Office, I reviewed the IATS [Inmate Appeals Tracking System] database for plaintiff Carlos Burnett, CDCR No. K51273…
>
> 6. Exhibit A demonstrates that there is one inmate appeal that plaintiff submitted to the Office of Appeals that was both accepted by, and received a decision from, the Office of Appeals during the relevant time period of 2017. The inmate appeal is identified as inmate appeal KVSP 16-03391. Besides this inmate appeal, plaintiff has not exhausted any other non-medical appeal at the third level. Inmate appeal KVSP 16-03391 does not grieve any claim related to the alleged denial of legal property or alleged denial of court access in 2017, as described in plaintiff's complaint. Further, inmate appeal KVSP 16-03391 does not identify defendant Caskey or Soto.
>
> 7. Exhibit A demonstrates that inmate appeal KVSP 16-03391 concerned an unnamed librarian at Kern Valley State Prison. Inmate appeal KVSP 16-03391 was accepted on April 11, 2017 and denied on June 13, 2017…

(<u>Id.</u> at 3.)

D. Foston's declaration, and the attached exhibit A listing plaintiff's third level grievances, demonstrate that plaintiff did not file a third level grievance regarding his claims against defendants Soto and Caskey before filing the original or first amended complaints.

Defendants have also provided the declaration of S. DeJesus, an Inmate Appeals Coordinator at CHCF. (ECF No. 30-1.) S. DeJesus reviewed the IATS database for plaintiff during the relevant time period and found that plaintiff submitted no first level or second level appeals while he was housed at CHCF. (<u>Id.</u> at 4; ECF No. 30-2.)

Defendants have also provided the declaration of D. Lucas, an Inmate Appeals

Coordinator at KVSP. (ECF No. 30-6.) D. Lucas states that he reviewed the IATS data base for plaintiff and found that plaintiff submitted six inmate appeals while housed at KVSP concerning issues that arose in 2017: 17-3142, 17-3530, 17-3382, 17-3000, 17-1236, 17-0309. (Id. at 4.) Grievance 17-1236 involved a disciplinary procedure, i.e., it was unrelated to the claims raised in the instant action. (ECF No. 30-6 at 5; ECF No. 30-12.) In grievance 17-0309, plaintiff alleged that his personal property had been destroyed in January 2017, i.e., this grievance was unrelated to the claims raised in the instant action. (ECF No. 30-6 at 5; ECF No. 30-13.)

Grievances 17-3142, 17-3530, 17-3382 and 17-3000 require further discussion because they raised claims related to plaintiff's claim against defendant Soto. As indicated herein, some of these grievances contain conflicting dates, i.e., the grievance was denied on a date that occurred before the date the grievance was submitted. It appears that this confusion was caused by grievances being sent from KVSP to the California Men's Colony ("CMC"). It appears that plaintiff transferred from KVSP to CMC, and then to CHCF.

As discussed herein, defendants' evidence does not adequately address the conflicts in the dates of these grievances.

*Grievance 17-3142*

Exhibit B attached to D. Lucas's declaration contains exhibits regarding grievance 17-3142. (ECF No. 30-8.) In grievance 17-3142, signed by plaintiff on December 13, 2017, plaintiff alleged that defendant Soto had all of his property. (ECF No. 30-8 at 4.) Plaintiff wrote that he submitted a Form 22, apparently to defendant Soto, regarding the lost property, but received no response. (Id.) Plaintiff requested that his property be replaced or returned. (Id.) Plaintiff indicated that he was attaching a Form 22 and a CDC 143 transfer receipt as supporting documents to his grievance. (Id.)

The Form 22 and CDC 143 form, apparently submitted by plaintiff with grievance 17-3142, are attached to defendants' Exhibit B. The Form 22 indicates that plaintiff submitted this form on November 8, 2017. (Id. at 5.) Plaintiff wrote on the Form 22 that he did not have his property and that KVSP was "putting it all on CMC." (Id.) Plaintiff wrote, "Appeal Coordinator A. Lucas Kern Valley State Prison on Wed. 10-18-17. My property was left at CMC and Kern

8

Valley State Prison A.S.U." (Id.) On November 14, 2017, Officer Davidson responded to the Form 22: "We've never received any property for you. I looked through the 143 and attached a copy that KVSP scratched 1 box of property when you were transferred here on the van." (Id.) Attached to this response is a Property Transfer Receipt, i.e., form 143, dated July 24, 2017. (Id. at 6.) The form contains plaintiff's name and lists one box of property, but plaintiff's name and the "one" are "scratched through." (Id.)

It appears that grievance 3142 was either originally filed at CMC or transferred to CMC after being filed at KVSP. The original 602 form for grievance 3142, signed by plaintiff on December 13, 2017, contains CMC grievance number 3183, "CMC Appeals Office" stamped on the side, and three stamped dates: October 17, 2017, October 31, 2017 and December 20, 2017. (Id. at 4.)

On November 1, 2017, A. Lucas, Appeals Coordinator at KVSP, rejected grievance 17-3142 at the First Level. (Id. at 3, 4.) Defendants do not address how a grievance signed by plaintiff on December 13, 2017, and dated October 17, 2017 apparently by the CMC Appeals office, could be rejected by A. Lucas on November 1, 2017. In any event, the November 1, 2017 response states that this grievance was rejected at the first level because it was missing "necessary supporting documents as established in CCR 3084.3." (Id. at 3.) The first level response identified the missing documents as CDCR 1083 property inventory, 160H property card and purchase receipts for alleged missing property. (Id.) The first level response also directed plaintiff to provide a property receipt/cell search receipt if applicable. (Id.) The first level response also advised plaintiff that he could not appeal a rejected appeal, but that he could take corrective action and resubmit the appeal within the time frames specified in CCR 3084.6(a) and CCR 3084.8(b). (Id.)

The first level appeal response contained a section for plaintiff to "respond/explain" a response to the rejection of his grievance. (Id.) In this section, plaintiff wrote, "Counselor never responded. 1083 is in missing property. No access to 160H and purchase receipts in missing property. C.R.C. Title 15 § 3193(b); 3084.1 Right to Appeal." (Id.)

On December 22, 2017, A. Lucas again rejected grievance 17-3142 at the first level of

9

review because it was missing necessary supporting documents.  (Id. at 2.)  The December 22, 2017 response stated that plaintiff's grievance was missing the same documents identified in the November 1, 2017 response.  (Id.)  The response also advised plaintiff,

> Utilize the form 22 process allowing time for a response.  Accurately complete section A of the form 22 and forward the form to KVSP STRH Property Officer and KVSP R & R property officer inquiring of the status of your property.  Attach attempts to contact staff (carbon copies of your Form 22) to this appeal.

Id.

### Grievance 17-3530

Exhibit C attached to A. Lucas's declaration contains documents regarding grievance 17-3530.  (ECF No. 30-9.)  Plaintiff did not sign or date this grievance.  (Id. at 3.)  In this grievance, plaintiff wrote that he was transferred from KVSP to CMC on or around July 24, 2017.  (Id. at 3.)  Plaintiff wrote that all of his property was missing.  (Id.)  Plaintiff attached the same Form 22 and CDC 143 forms as supporting documents as were attached to grievance 17-3142.  (Id. at 3, 5, 6.)  Plaintiff also attached a Form 22 form dated October 9, 2017 in which he requested the return of his property.  (Id. at 7.)  Plaintiff addressed this form to defendant Soto.  (Id.)  The form indicates that it was reviewed by prison staff, although it contains no written response.  (Id.)

On December 18, 2017, A. Lewis cancelled grievance 17-3530 as duplicative of grievance 17-3142.  (Id. at 2.)  The response advised plaintiff that a cancelled grievance could not be resubmitted.  (Id.)  However, a separate appeal could be filed on the cancellation decision.  (Id.)

### Grievance 17-3382

Exhibit D attached to D. Lucas's declaration contains documents regarding grievance 17-3382.  (ECF No. 30-10.)  Plaintiff submitted grievance 17-3382 on November 14, 2017.  (Id. at 3.)  In grievance 17-3382, plaintiff appealed the rejection of grievance 17-3142.  (Id.)  Plaintiff wrote,

> A. Lucas know that appellant don't have any property! So how can appellant produce an CDCR 1083 property inventory form?  I'm indigent and my counselor Pixly isn't going to produce no copies of property, nor 160H property card.  I'm sending him CDC 22 requesting supporting documents not attached purchase receipts for the missing property.  Provide confiscated property receipt/cell search receipt if applicable.  None of these supporting documents

10

isn't applicable. If I needed these documents, why did KVSP forward CDC 695 to CMC Log KVSP 17-3000 another CDCR unit for processing on October 18, 2017? A. Lucas is obstructing plaintiff right to appeal.

(Id. at 3-4.)

Apparently attached as supporting documents to grievance 17-3382 are documents from grievance KVSP 17-3000, discussed herein.

On December 1, 2017, A. Lucas returned all documents filed by plaintiff in connection with grievance 17-3382 because "they are not an appeal." (Id. at 2.)

*Grievance 17-3000*

Exhibit E to D. Lucas's declaration contains documents regarding grievance 17-3000. (ECF No. 30-11.) Plaintiff did not sign or date this grievance. (Id. at 4.) However, plaintiff states that he attached a Form 22 and a Form 142 as supporting documents. (Id.) Attached to the grievance is the Form 22 signed by plaintiff on November 8, 2017. (Id. at 5.) Confusingly, the grievance contains several file stamp dates, apparently made by the CMC Appeals Office, the earliest being October 17, 2017. (Id.) In this grievance, plaintiff wrote that his property was in the possession of CMC. (Id.) Plaintiff also wrote that he had received no response to his Form 22. (Id.)

The documents attached to Exhibit E indicate that grievance 17-3000 was transferred to CMC and assigned grievance no. CMC 17-3255. (Id.) On November 2, 2017, grievance CMC 17-3255 was rejected for missing necessary supporting documents. (Id. at 17.) Plaintiff resubmitted this grievance by informing CMC appeal coordinators that he did not have the documents they requested because they were in his missing property. (Id.)

On December 30, 2017, CMC officials issued another first level response to grievance CMC 3255. (Id. at 16.) This response stated that,

Be advised that your appeal has been forwarded to another CDCR unit for processing.

As you were informed on Appeal Log # CMC-E-17-3841, per the attached CDCR 22 form, CMC never received property for you. The CDCR 142 attached shows KVSP scratched the box of property from the list when you were transferred here to CMC. Your appeal has

11

been forwarded to KVSP for further review.

(Id. at 16.)

On January 24, 2018, KVSP officials issued a first level response to grievance 17-3000, i.e., former grievance CMC 17-3255. (Id. at 7.) This response states,

> It has been determined your appeal has been assigned to the SLR in error based on the following reasons. The appellant contends his property is in the possession of CMC on 8/24/2017. Records indicate the appellant last left KVSP on 7/24/2017, arriving at CMC on 7/24/2017. Pursuant to CDC 0142 dated 7/24/2017, 1 box of the appellant's property was transferred to CMC. Pursuant to CDCR 0143 dated 1/2/2018, the remaining 3 boxes of property was transferred to CSP-LAC on 1/2/2018. Therefore your appeal will [be] rejected and forwarded to CMC IAO for further processing.

(Id. at 7.)

On February 13, 2018, CMC officials issued another first level response to grievance CMC 17-3255. (Id. at 15.) This response stated that plaintiff's grievance was rejected because it was missing necessary supporting documents. (Id.) It also stated,

> Documented proof with a CMC staff signature has not been provided to show that your property was received by CMC Staff. The last document provided are the attached CDCR 143 from KVSP showing one box of your property was picked up by KVSP Transportation staff on 7/24/2017 for transport to CMC, however, there's no signature showing CMC Staff received your property. You need to provide supporting documentation that reflects CMC took possession of your property. CMC R & R was contacted again today 2/13/18 and again no property was ever received for you here at CMC. Again, provide documentation that shows your property was received by CMC staff and resubmit your appeal for further review.

(Id.)

On March 27, 2018, CMC officials issued another first level response to grievance CMC 17-3255. (Id. at 14.) This response states that plaintiff's grievance was forwarded to KVSP for further review at the first level. (Id.)

On April 27, 2018, another first level response to appeal KVSP 17-3000 was issued. (Id. at 2.) This response states, in relevant part,

> After a fact-finding inquiry, I have determined one box of your property was transported from Kern Valley State Prison (KVSP) to CMC via transportation team on July 24, 2017 and signed for as received (albeit on the incorrect line) by R. Cohen Correctional Sergeant, CMC (Property Transfer Receipt CDC -143 attached).

12

Three additional boxes of your property comprising the total was shipped from KVSP to LAC on January 3, 2019 via GSO with the following tracking numbers, ....., ....., and ....., delivered on January 4, 2018 and signed for as received by R. Roxie, LAC.

Based on the above information, your appeal is partially granted at the first level of review. Partially granted in that you have already received your three boxes of property from KVSP. KVSP records indicate CMC has been in possession of your remaining box of property since July 24, 2017, as indicated on the CDC 143.

(Id. at 2.)

F. Analysis-Defendant Caskey

Defendants' evidence indicates that plaintiff did not exhaust administrative remedies with respect to his claims against defendant Caskey. According to D. Foston, there is no record of a third level grievance filed by plaintiff regarding his claims against defendant Caskey. S. DeJesus states that CHCF has no record of plaintiff submitting any first or second level grievances while he was housed at CHCF.

In his opposition, plaintiff alleges that on September 3, 2017, he submitted a grievance regarding his claims against defendant Caskey. (ECF No. 31 at 8.) Plaintiff alleges that this grievance was never answered. (Id.) Attached to plaintiff's opposition is a grievance signed by plaintiff on September 3, 2017, alleging that on August 15, 2017, defendant Caskey would not let him have his legal property. (Id. at 13.) This form contains no notation indicating that prison staff reviewed or received this grievance. (Id.)

In a declaration filed in support of this grievance, plaintiff states,

[Plaintiff] declares: On 4-22-18, that I filed a 22 form. It was never answered. He then filed an 602 on Caskey on 9-13-17. Pertaining to his legal property. Caskey told declarant that he can't have his property. By not letting him have my legal property. My deadline was interfered with by Caskey. It prejudice his case. The 602 was never answered. Declarant gave it 30 days, plus 3 days.

(Id. at 8.)

The undersigned observes that plaintiff has also attached to his opposition a grievance he claims he submitted on August 15, 2017, alleging that defendant Soto took away his legal property. (Id. at 31.) This grievance also contains no notation indicating that prison staff reviewed this grievance. (Id.) Plaintiff also alleges that he received no response to this

13

grievance.  (Id. at 9.)

This September 3, 2017 grievance discussed above, regarding defendant Caskey, raised no claim regarding an inadequate law library or denial of access to a copy machine or manila envelopes.  Thus, this grievance could not have exhausted these claims.  Accordingly, the undersigned finds that plaintiff failed to administratively exhaust his claims against defendant Caskey regarding the allegedly inadequate law library and denial of access to a copy machine and manila envelopes.

If prison officials failed to respond to plaintiff's September 3, 2017 grievance, as plaintiff alleges, then plaintiff is deemed to have exhausted the claim that defendant Caskey denied him access to his legal property.  See Ross v. Blake, 136 S. Ct. 1850, 1859 (2016); Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017) ("When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies.")

In the reply to plaintiff's opposition, defendants argue that the September 3, 2017 grievance "bear[s] no indicia that [it was] ever submitted to, or received by, the Appeals Office at …the California Health Care Facility …."  (ECF No. 35 at 2-3.)  In support of this argument, defendants submitted a supplemental declaration by S. DeJesus.  (ECF No. 35-2.)  S. DeJesus states that every appeal received by the Appeals office is date-stamped, and plaintiff's September 3, 2017 grievance discussed above contains no date stamp.  (ECF No. 35-2 at 2-3.)

Ordinarily, the court does not consider "new evidence ... presented in a reply to a motion for summary judgment," unless the non-movant has an opportunity to respond.  Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996).  Were the undersigned to consider the supplemental declaration and evidence attached to defendants' reply, he would still find, for the reasons stated herein, that plaintiff has submitted sufficient evidence to create a material dispute regarding whether he submitted the September 3, 2017 grievance and whether prison officials failed to respond.  For this reason, the undersigned declines to consider the supplemental evidence attached to the reply.

////

1    The undersigned has doubts regarding the authenticity of the September 3, 2017 grievance

2    because, as defendants observe, it contains no indicia that it was ever submitted to, or received by

3    the Appeals Office, like the other grievances submitted by defendants in support of the summary

4    judgment motion.  Plaintiff's submission of the August 15, 2017 grievance containing claims

5    against defendant Soto, which also contains no markings indicating receipt by prison officials and

6    which also allegedly went unanswered, also raises doubts regarding the authenticity of these

7    documents.  However, a court may not simply disregard admissible evidence on summary

8    judgment.  See Nigro v. Sears, Roebuck and Co., 784 F.3d 495, 497 (9th Cir. 2015) ("Although

9    the source of the evidence may have some bearing on its credibility and on the weight it may be

10   given by a trier of fact, the district court may not disregard a piece of evidence at the summary

11   judgment stage solely based on its self-serving nature."); Leslie v. Grupo ICA, 198 F.3d 1152,

12   1158 (9th Cir. 1999) (district court could not disregard evidence simply because no reasonable

13   jury would believe it); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626,

14   630 (9th Cir. 1987) ("Nor does the judge [on summary judgment] make credibility determinations

15   with respect to statements made in affidavits, answers to interrogatories, admissions, or

16   depositions").

17       Whether prison officials failed to respond to plaintiff's September 3, 2017 grievance is a

18   materially disputed fact.  Accordingly, defendants' motion for summary judgment on the grounds

19   that plaintiff failed to administratively exhaust his claim that defendant Caskey denied him access

20   to his legal property should be denied.

21       B.  Analysis—Defendant Soto

22       As discussed above, plaintiff is required to have exhausted administrative remedies as to

23   his claim against defendant Soto before he filed the original complaint on September 7, 2017.

24       The undersigned first discusses the most relevant grievance, no. 17-3142, in which

25   plaintiff alleged that defendant Soto had his legal property.  The record contains no evidence

26   regarding when plaintiff first submitted this grievance.[4]  As discussed above, plaintiff signed the

27   _____

28   [4]  It appears likely that plaintiff first submitted this grievance after he filed this action.  However, the undersigned cannot make this finding based on the current record.

15

first level grievance on December 13, 2017, yet the first level grievance contains stamps suggesting that it was received by the CMC appeals office on October 17, 2017. Based on these conflicting dates, which defendants do not address, the undersigned cannot determine when or where plaintiff first submitted grievance 17-3142. While CMC officials clearly reviewed grievance 17-3142, the record contains no evidence regarding when this review took place or how CMC officials addressed this grievance. Without this information, the undersigned cannot determine whether grievance 17-3142, aka CMC 17-3183, failed to exhaust plaintiff's administrative remedies.[5]

Grievances 17-3530 and 17-3382 appealed the rejection of grievance 17-3142. It appears that both of these grievances were filed after plaintiff filed the instant action, although plaintiff did not date grievance 17-3530. These grievances are not particularly relevant to whether plaintiff exhausted his claims against defendant Soto, as the grievance most relevant to this issue is 17-3142.

Defendants argue that grievance 17-3000 did not exhaust plaintiff's administrative remedies because it failed to name defendant Soto. As discussed above, in this undated grievance, plaintiff alleged that his property was at CMC. It appears that plaintiff filed this grievance after getting conflicting information from KVSP prison officials regarding the location of his missing property. It is unclear whether plaintiff filed this grievance before or after he filed grievance 17-3142. This grievance may be relevant to plaintiff's exhaustion of administrative remedies as to his claims against defendant Soto if it is determined that grievance 17-3142 was improperly processed or that plaintiff was given misinformation regarding the location of his missing property.

////

---

[5]  As discussed above, A. Lucas rejected grievance 17-3142 based on plaintiff's failure to supply documents that plaintiff informed him were not in his possession because they were with his missing property. If, before plaintiff filed this action, CMC officials also rejected grievance 3142, i.e. CMC grievance 17-3183, for plaintiff's failure to provide documents not in his possession, the undersigned may find that plaintiff exhausted all available remedies. See Ross v. Blake, 136 S. Ct. 1850, 1859 (2016); Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017).

For the reasons discussed above, the undersigned finds that defendants have not met their initial summary judgment burden of demonstrating the absence of a genuine issue of material fact regarding plaintiff's alleged failure to exhaust administrative remedies as to his claims against defendant Soto. In his declaration addressing these grievances, A. Lucas does not address the issues regarding the conflicting dates in the grievances and the apparent conflict between KVSP and CMC regarding the location of plaintiff's property, which apparently impacted the processing of the grievances. (See ECF No. 30-6.)

The undersigned recommends that defendants' motion for summary judgment based on plaintiff's alleged failure to exhaust administrative remedies with respect to his claims against defendant Soto be denied on the grounds that defendants did not meet their initial summary judgment burden.[6]

C. Is An Evidentiary Hearing Required?

If a motion for summary judgment based on alleged failure to exhaust administrative remedies is denied, disputed factual questions relevant to exhaustion should be decided by the judge at a pretrial evidentiary hearing. Albino v. Baca, 747 F.3d 1162, 1170-71 (9th Cir. 2014).

The undersigned recommends that defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies as to his claim that defendant Caskey denied him access to his legal property be denied based on disputed facts. Defendants have not requested an evidentiary hearing as to this issue. However, because the undersigned herein grants defendants' motion to dismiss with leave to amend, the undersigned finds that an evidentiary hearing regarding this issue is premature. If plaintiff files a second amended complaint containing a potentially colorable access to the courts claim against defendant Caskey, defendants may request an evidentiary hearing regarding this issue.

---

[6] Because defendants did not meet their initial summary judgment burden with regard to plaintiff's claims against defendant Soto, the undersigned need not address the grievance plaintiff claims he submitted on August 15, 2017 raising his claims against defendant Soto. Plaintiff claims that he received no response to this grievance. Prison officials had thirty working days to respond to this grievance. See Cal. Code Regs. tit. 15, § 3084.8(c)(1). Plaintiff filed the original complaint before thirty working days after August 15, 2017 had run. Therefore, plaintiff's August 15, 2017 grievance would not have exhausted his claims against defendant Soto.

As discussed above, the undersigned finds that defendants did not meet their initial summary judgment burden of demonstrating the absence of issues of material fact regarding plaintiff's alleged failure to exhaust administrative remedies as to his claims against defendant Soto. Because defendants did not meet their initial burden, there are no disputed facts regarding whether plaintiff failed to exhaust administrative remedies with respect to his claims against defendant Soto. Accordingly, defendants are not entitled to an evidentiary hearing as to this issue.

III.  Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

A. Legal Standard

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. Iqbal, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 956 (9th Cir. 2013). Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

Pro se pleadings are held to a less-stringent standard than those drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). However, the court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) (citing Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981)).

18

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

### B. Legal Standard for Claim Alleging Denial of Access to the Courts

Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977).

To establish a violation of the right of access to the courts a prisoner must allege facts sufficient to show that: (1) a nonfrivolous legal attack on his conviction, sentence, or conditions of confinement has been frustrated or impeded, and (2) he has suffered an actual injury as a result. See Lewis, 518 U.S. at 353-55; Christopher v. Harbury, 536 U.S. 403, 415 (2002) (to state an access to courts violation, plaintiff must describe the non-frivolous nature of the "underlying cause of action, whether anticipated or lost"). The prisoner must demonstrate that he has suffered or will imminently suffer actual injury. Lewis, 518 U.S. at 348.

### C. Discussion

As discussed above, in the amended complaint, plaintiff alleges that due to the denial of access to his legal property, he was unable to meet the one-year statute of limitations contained in AEDPA. (ECF No. 14 at 4.) Plaintiff alleges that he "has a one year deadline running." (Id.)

Defendants move to dismiss plaintiff's access to the court claim on the grounds that his amended complaint does not allege what conviction he sustained, when he sustained the conviction, and the date that his direct appeal concluded that began the one-year limitations

1   period to file a habeas corpus petition under AEDPA.

2          Defendants go on to argue that even if plaintiff had made such allegations regarding his

3   conviction, his claim would fail.  Defendants state that in 1997 plaintiff was convicted of first

4   degree murder.  (See ECF No. 30-15; abstract of judgment.[7])  Defendants state that plaintiff filed

5   a habeas corpus petition in federal court regarding this conviction, which was denied.  (See ECF

6   No. 30-16 (federal habeas petition); ECF No. 30-17 (order denying federal habeas petition).)

7   Hence, defendants argue, plaintiff has already sought and been denied relief under AEDPA.

8          In his opposition, plaintiff alleges that he is not alleging that he missed the AEDPA

9   deadline for his murder conviction.  (ECF No. 31 at 2-3.)  Plaintiff alleges that he missed the

10  AEDPA deadline for case no. SS120260.  (Id.)  Plaintiff alleges that he was unable to exhaust his

11  state and federal remedies in this case.  (Id. at 3.)  Plaintiff alleges that defendant Soto lost his

12  transcripts regarding case no. SS120260.  (Id. at 4.)  Attached to plaintiff's opposition is a letter

13  addressed to plaintiff from attorney Jason Szydlik apparently regarding case no. SS120260.  (Id.

14  at 6.)  In this letter, dated April 3, 2017, Mr. Szydlik states that the California Supreme Court

15  denied his petition for review.  (Id.)  Mr. Szydlik advises plaintiff to file a habeas corpus petition

16  in federal court.  (Id.)

17         Defendants' motion to dismiss is granted with leave to amend because plaintiff failed to

18  identify the conviction he was allegedly unable to challenge due to missing legal property.  If

19  plaintiff files a second amended complaint, he shall identify the at-issue conviction and discuss

20  when the statute of limitations for this conviction began to run.  Plaintiff shall also clarify what

21  legal materials he was missing which prevented him from filing a federal habeas petition, or other

22  relevant state pleading.  Plaintiff shall address when his legal materials were returned, if ever, and

23  whether he was able to file a timely petition upon receiving his legal property.

24         In the reply to plaintiff's opposition, defendants make several arguments regarding why

25  plaintiff has not stated a potentially colorable access to the courts claim based on his alleged

26  inability to challenge conviction no. SS120260.  Several of these arguments are based on exhibits

27
---
28  [7]  Courts may take judicial notice of court filings and other matters of public record.  See Reyn's Pasta Bella, LLC v .Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

attached to plaintiff's opposition.  However, the court does not consider the exhibits attached to plaintiff's opposition in evaluating the motion to dismiss.  See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.")  Accordingly, the undersigned similarly does not address defendants' arguments based on these exhibits.[8]

The undersigned herein addresses defendants' arguments raised in the reply that plaintiff has not stated a potentially colorable access to the courts claim regarding case no. SS120260 that are not based on new evidence.

In the reply, defendants argue that plaintiff did not require the transcripts he claims defendant Soto lost in order to challenge his conviction in case no. SS120260.  Defendants argue that 28 U.S.C. § 2254 does not require petitioners to attach state court records, unless they challenge the sufficiency of the evidence.  Defendants also argue that that the similarity between plaintiff's state post-conviction and plaintiff's proposed federal petition also undercuts plaintiff's argument that the lack of materials caused his delay in filing a federal habeas petition.

Defendants are correct that petitioners are not required by 28 U.S.C. § 2254 or the Rules Governing Section 2254 cases to attach transcripts to their petitions, or to file separately state court records, unless they challenge the sufficiency of the evidence.  Pliler v. Ford, 542 U.S. 225, 232 (2004).  However, it is unclear whether plaintiff intended to raise a sufficiency of the evidence claim in his federal petition.  In addition, in the amended complaint, plaintiff alleges that he was denied access to all of his legal property, which may have included other materials that he needed to prepare a federal petition.  Plaintiff shall clarify these matters in a second amended complaint.

---

[8]  Defendants argue that Mr. Szydlik's letter contradicts plaintiff's claim that he was unable to exhaust state court remedies.  Defendants also argue that if the AEDPA deadline commenced on April 3, 2018, as alleged in plaintiff's opposition, plaintiff had ample time to complete and to file his habeas petition before he was allegedly separated from his property on July 27, 2017.  This argument is apparently based on allegations in plaintiff's opposition and Mr. Szylik's letter.  As discussed above, in the second amended complaint, plaintiff shall clarify whether he was unable to meet both state and federal deadlines for challenging his conviction in case no. SS120260.  If plaintiff is challenging his ability to meet the AEDPA deadline, he shall address when the statute of limitations ran.

Defendants also argue that plaintiff cannot demonstrate an actual injury because defendants cannot be liable for his failure to invoke equitable tolling under AEDPA. The AEDPA's one-year limitations period is subject to equitable tolling if a habeas petitioner shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Holland v. Florida, 130 S. Ct. 2549, 2560-62 (2010). Defendants argue that if, in fact, plaintiff could not file a timely petition without a specific document, due diligence obligated him to advise the court of his circumstances and seek equitable tolling. See Chaffer v. Prosper, 592 F.3d 1046, 1049 (9th Cir. 2010) (petitioner's request for equitable tolling based on his allegation he lacked access to legal files must include specific instances when he needed a particular document that he could not procure).

In the amended complaint, plaintiff alleges that he was denied access to all of his legal property. In other words, plaintiff is not alleging that he was denied access to a particular legal document. Without access to any of his legal property, plaintiff may have been unable to file a federal habeas petition. If plaintiff files a second amended complaint, plaintiff shall address whether he was able to file a federal habeas petition, whether he invoked equitable tolling, and the outcome of that petition.

Defendants' motion to dismiss is granted with leave to amend because plaintiff may be able to state a potentially colorable claim for denial of access to the courts.

If plaintiff files a second amended complaint, he shall keep in mind that the Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy

demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert. denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

Accordingly, IT IS HEREBY ORDERED that defendants' motion to dismiss (ECF No. 30) is granted with plaintiff being given leave to amend only as to his claims alleging that defendants Soto and Caskey denied him access to his legal property in violation of his right to access the courts – such an amendment must be consistent with the guidance and requirements set forth above. Plaintiff is granted thirty days from the date of this order to file a second amended complaint; failure to file a second amended complaint within that time will result in a recommendation of dismissal of this action; defendants are not required to file a response to the second amended complaint until ordered by the court;

IT IS HEREBY RECOMMENDED that:

1. Defendants' summary judgment motion (ECF No. 30) be granted as to plaintiff's claims against defendant Caskey alleging an inadequate law library and denial of access to a copy machine and manila envelopes for failure to exhaust administrative remedies;

////

2.  Defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies as to his claim that defendant Caskey denied him access to his legal property be denied without prejudice to defendants requesting an evidentiary hearing at a later stage of these proceedings, if appropriate;

3.  Defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies as to his claims against defendant Soto be denied on grounds that defendants did not meet their initial summary judgment burden.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 12, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Burn1856.sj